## H. W. Caldwell, Appellee, v. Henry Hornblower et al., Appellants.

### Gen. No. 31,644.

1. BROKERS—*stock exchange rule as to delivery of stock not applied to prior transaction.* A rule of a stock exchange that "until further notice transactions in the Mercer Motors Company common stock may be settled by delivery" of voting trust certificates, does not, in the absence of any explanation as to the method of doing business, apply to require a purchaser of common stock of that company to accept voting trust certificates from his broker whom he had requested to purchase common stock thirty-five days before the adoption of the rule.

2. BROKERS—*when stockbroker's purchase of voting trust certificates in place of common stock not harmful to his customer.* Where a stockbroker is ordered by a customer to purchase common stock and thereafter to sell such stock and, upon the broker requesting the customer to indorse certificates so delivery of the same may be made to close the deal, the customer discovers that voting trust certificates have been purchased instead of common stock and refuses his indorsement, and, after tendering common stock to the broker to cover the sale which showed a loss on the deal, seeks to recover from the broker the money given the broker to make the purchase, claiming that the order was not complied with by the purchase of voting trust certificates, held no recovery could be had, it appearing that the sale could be cleared by the delivery of voting trust certificates.

Appeal by defendants from the Municipal Court of Chicago; the Hon. DANIEL P. TRUDE, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Reversed. Opinion filed December 12, 1927. Rehearing denied December 27, 1927.

DENT, DOBYNS & FREEMAN, for appellants.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for appellee; ARTHUR R. HALL, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendants to recover $6,872.50, which he claimed to have given the defend-

ants, who were stockbrokers, in payment of stock purchased by them for him, and that the defendants tenddered to him certain voting trust certificates in lieu of the stock, which he refused to receive and demanded the return of his money, together with interest thereon of $1,259.94, making a total claim of $8,132.44. On the trial of the case before the court, without a jury, there was a finding and judgment in plaintiff's favor for the amount of his claim, and the defendants appeal.

The record discloses that the defendants were stockbrokers with offices in Chicago and several other cities; that on February 8, 1923, plaintiff instructed the defendants, through their Chicago office, to purchase for him 1,500 shares of common stock of the Mercer Motors at $3 a share; that the purchase was made, plaintiff notified, and he paid the purchase price of $4,500 for the stock, together with $82.50 brokers' commission; that on the next day, February 9, 1923, plaintiff instructed the defendants to purchase for him 1,000 shares of the same stock at $2.25 a share. The purchase was made, plaintiff notified, and he paid the defendants the purchase price of the stock, together with commissions. The evidence further shows that the Mercer Motors stock was traded in only on the New York Curb and subject to the rules of that curb, and that plaintiff knew of this fact; that in addition to the stock of the Mercer Motors there were voting trust certificates of the same company being dealt in on the New York Curb at the same time; that on March 15, 1923, the proper authorities of the New York Curb passed a rule which provided that "The Committee on Listing Securities rules that until further notice transactions in the Mercer Motors Company common stock may be settled by delivery either of Temporary common Stock Certificates or Temporary Voting Trust Certificates," and five days later, on March 20th, a further rule was passed providing that in the event of voting trust certificates being

delivered against transactions in the common stock, the seller should pay four cents per share to cover the Federal and State taxes which were to be levied against the exchange of voting trust certificates for common stock certificates.

It further appears that after the passage of the above rules there was delivered to the defendants in fulfillment of the 2,500 shares of common stock purchased by them for plaintiff, 500 shares of the common stock and 2,000 shares in the form of voting trust certificates, and the defendants also received $80 to cover the transfer fee of four cents a share, as provided by the rule of March 20th above quoted.

On March 28th plaintiff instructed the defendants to sell the 2,500 shares of common stock at $1⅜ per share and the instruction was at once carried out and the stock sold. On the next day, March 29, 1923, defendants requested plaintiff to come to their Chicago office to indorse his name on the back of the 500 shares of stock and the 2,000 voting trust certificates so that it could be delivered to the purchaser of the 2,500 shares of stock sold by the defendants for plaintiff on March 28th. Plaintiff called at defendants' office for this purpose, but when he learned that the defendants did not have 2,500 shares of the common stock but only 500 shares, and 2,000 voting trust certificates, he refused to indorse them because, as stated by him, he had bought 2,500 shares of stock and not voting trust certificates. Plaintiff left defendants' office and on the same day wrote them a letter stating that on February 8th and 9th he had ordered the defendants to purchase the stock as above set forth, and on March 28th had instructed them to sell 2,500 shares of stock at $1⅜ per share, and that he had been notified by defendants that this had all been done; that upon calling at defendants' office at their request, he was offered 2,000 shares of voting trust certificates; that he refused to accept or indorse them, and stated: "In-

asmuch as the order was not filled in accordance with my instructions, I request that you hereby consider the order cancelled.'' Afterwards, the exact date not appearing, plaintiff delivered to defendants certificates for 2,500 of the common stock of the Mercer Motors Company which he had purchased from persons other than the defendants, so that the defendants could deliver the certificates on the sale made March 28th. This tender defendants were compelled to accept to close the deal. It further appears that the 500 shares of stock and the voting trust certificates were still in the possession of the defendants at the time of the trial, they not being able to do anything with them unless plaintiff would indorse 'them, the certificates and stock being in plaintiff's name.

The defendants contend that the judgment is wrong and should be reversed because under the law a person employing a broker to deal for him on the stock exchange is bound by the rules of such exchange; that on March 15th, when the committee of the New York Curb passed the rule above quoted, it was binding upon plaintiff, and although the defendants had purchased for plaintiff the common stock of the Mercer Motors Company, yet under the rule they were obliged to take voting trust certificates if such were delivered to them in fulfillment of the purchases. The rule of law is as stated by counsel for the defendants, but we think it is not applicable in the instant case. The 2,500 shares of stock were purchased on February 8th and 9th and the rule was not passed until about 35 days thereafter —March 15th—and we think the rule is so worded as to apply only to transactions made after its enactment. It provides that ''until further notice transactions in the Mercer Motors Company common stock may be settled by delivery'' of voting trust certificates. In the absence of any explanation as to the method of doing business, we hold that the rule does not apply to the transactions of February 8th and 9th.

Plaintiff's position is that the failure of defendants to procure common stock was caused by their negligence in failing to act promptly after the purchases were made on February 8th and 9th; that if the defendants had acted promptly, common stock certificates could have been obtained before the passage of the rule of March 15th, and that the failure of the defendants to obtain the stock for him entitled him to the return of his money. In the view we take of the case it will be unnecessary for us to pass upon the question as to whether the defendants were negligent as contended by plaintiff, because we are of the opinion that plaintiff cannot recover in any view of the case. The facts are stipulated and from them it appears that the defendants purchased common stock on the 8th and 9th of February as plaintiff ordered. It further appears from the stipulation that on March 28th, at plaintiff's request, the defendants sold the 2,500 shares of common stock which they had purchased for him. Plaintiff had paid for the stock $6,750, and it had been sold at his request for $3,437.50, so that plaintiff had lost on the transaction, exclusive of brokers' fees, $3,312.50. The facts as stipulated show that the sale of the 2,500 shares of stock on March 28th could be cleared and closed by the delivery of 500 shares of common stock and the 2,000 shares of the voting trust certificates. Plaintiff's refusal to make the indorsement for the reason given by him was but a mere subterfuge in the hope that he might escape the loss he had already sustained. There is no merit in his contention.

The judgment of the municipal court of Chicago is reversed, but since plaintiff cannot recover the cause will not be remanded.

*Judgment reversed.*

MATCHETT, P. J., and McSURELY, J., concur.